

Attorneys at Law

Joshua A. Stein
t  212.351.4660
f  212.878.8600
jstein@ebglaw.com

June 1, 2018

**VIA ECF**
Honorable Valerie Caproni
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

> Re:  Dedra De La Rosa v. Soho 105 Greene Retail LLC and Christian Dior, Inc.
> Civil Action No.: 17 CV 05869 (VEC)(BCM)

Dear Judge Caproni:

We represent Defendant Christian Dior, Inc. (hereinafter, "Dior"), in the above-referenced action. We submit this letter: (1) to provide the Court with an update on Dior and Defendant Soho 105 Green Retail LLC's ("Soho 105") remediation efforts in accordance with the Court's December 1, 2017 Order (Docket No. 26); and (2) to inform the Court that the parties have conferred in accordance with the Court's March 28, 2018 and April 18, 2018 Orders (Docket Nos. 35 and 37), and have agreed to proceed to a settlement conference with Magistrate Judge Moses under the terms and conditions outlined in Dior's March 19, 2018 letter (Docket No. 34) (and reiterated below). We address each of these items in turn below.

### A. Defendants' Quarterly Update

#### 1. Dior

As set forth in Dior's January 31, 2018 letter (Docket No. 29), Dior has fully completed the modifications necessary to resolve those of Plaintiff's allegations that Dior has the ability to address; specifically, it has completed the necessary modifications to provide a fully accessible fitting room.

#### 2. Soho 105

As set forth in Dior's January 31, 2018 letter, Soho 105 previously submitted applications with the New York City Department of Buildings ("DOB") and Landmarks Preservation Commission ("Landmarks") in furtherance of its plans to address Plaintiff's allegations relating

Hon. Valerie E. Caproni
June 1, 2018
Page 2

to access into the premises from the street. As was also set forth in this letter, on February 14, 2018, Soho 105's architect met with Landmarks, who raised some issues about Soho 105's plans and suggested alterations. Following this meeting, Soho 105 has been working with its architect and executive team to adjust its plans to comport with Landmarks' requirements, and they expect to submit revised plans in the immediate future for further review and, ideally, approval.

### B. Mediation

As set forth in Dior's March 19, 2018 letter (Docket No. 34), the parties had previously conferred regarding (1) the terms under which the parties would agree to proceed to mediation and (2) the terms under which Defendants would agree to proceed to engage in a very limited scope of voluntary discovery, as Plaintiff's counsel represented that he required certain documents in order to proceed to mediation.

First, the parties had agreed that neither would request mediation statements, but would provide such statements in the event that Magistrate Judge Moses required them, and in that case, in order to avoid incurring substantial costs and expenses, they would respectfully request that the mediation statements be limited to no more than three pages per each party.

Second, Defendants believe that each party should bear its own fees and costs incurred in preparing for and attending the mediation. Plaintiff's counsel believes that if the matter is resolved at mediation, Defendants should be responsible for Plaintiff's fees incurred at the mediation. Defendants have represented that they will consider this in the event that Plaintiff's counsel demonstrates that he is prepared to attend the mediation in good faith.

Third, Plaintiff's counsel represented that in the event that the parties could agree on the scope of the documentary discovery and he received the agreed upon documents in advance of the mediation, he will provide Defendants with a monetary demand broken down into the following three categories: (1) Plaintiff's alleged damages; (2) attorneys' fees and costs and (3) experts' fees and costs. Plaintiff's counsel agreed that this demand would be provided sufficiently in advance of the mediation to give Defendants time to fully assess it and possibly counter. Defendants informed Plaintiff's counsel they are unable and unwilling to go forward with mediation without Plaintiff's demand (and any future counters) broken up into these distinct categories.

With respect to the voluntary exchange of documentary discovery, after Defendants reviewed Plaintiff's document requests, they expeditiously undertook significant search efforts to determine what documents exist, what documents are relevant and responsive to the request, and in turn, what documents they would be willing to provide. As detailed in Dior's May 14, 2018 letter to the Court (Docket No. 38), on Monday, May 7, 2018, Defendants informed Plaintiff's counsel that – in an effort to elicit a settlement demand and proceed to mediation -- they would significantly expand their prior position on the document exchange and provide certain documents. On May 14, 2018, Plaintiff's counsel stated that in addition to the documents that Defendants had agreed to produce on May 7, 2018, Plaintiff was seeking two additional categories of documents which counsel required in order to proceed with mediation: (1) any agreement between Dior and its Construction Manager/General Contractor; and (2) the results of

Hon. Valerie E. Caproni
June 1, 2018
Page 3

any reviews or inspections performed by defendant Dior, its architect(s), and Soho105 (or its predecessor) relating to the completion of the work in conformance with the plans for the Dior space, and the Dior lease. Defendants responded that they would conduct a search for these documents and to the extent that they existed, they would review them and determine whether they would produce them, and subsequently, the parties would advise the Court as to whether they had come to an agreement on the terms of the voluntary disclosure.

On May 29, 2018, Defendants informed Plaintiff's counsel that they conducted the supplemental searches with respect to Plaintiff's May 14, 2018 document requests, and located relevant documents responsive to the first document request, which they were prepared to produce. With respect to the second request, Defendants informed Plaintiff's counsel that they would agree to produce a letter from the City of New York which describes the review process performed by Defendants, however, the only other responsive documents identified were protected by attorney-client privilege and would not be produced. On May 30, 2018, Plaintiff's counsel sought and was provided with certain supplemental information about Defendants supplemental offer. Ultimately, on May 30, 2018, Plaintiff provided consent for the Parties to proceed with mediation according to the previously agreed upon terms.

Defendants will require approximately two weeks to prepare the documents for production. Plaintiffs will then require approximately three weeks to review Defendants' production and provide Defendants with a settlement demand broken down into the following three categories: (1) Plaintiff's alleged damages; (2) attorneys' fees and costs and (3) experts' fees and costs. The Parties would then appreciate at least a week to see if any progress can be made in reaching an agreement prior to a formal mediation. Therefore, the Parties would seek a mediation date no sooner than the week of July 16, 2018.

We thank the Court for its attention to, and ongoing patience with, this matter.

Respectfully submitted,

*/s/ Joshua A. Stein*

Joshua A. Stein
Shira M. Blank

cc:   Daniel Seidenstein (via ECF)
      Adam Hanski (via ECF)